UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LAUREN SAPOSNICK,

                          Plaintiff,

                                                    **MEMORANDUM & ORDER**
          - against -                                 20-CV-3844 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Lauren Saposnick brings this action under 42 U.S.C. § 405(g), seeking judicial review

of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits

("DIB").  The parties have cross-moved for judgment on the pleadings.  (Dkts. 15, 22.)  For the reasons

below, the Court grants Plaintiff's motion for judgment on the pleadings and denies Defendant's

motion.  The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.    Procedural History

On November 29, 2016, Plaintiff filed an application for DIB, alleging disability beginning

May 11, 2015.  (Administrative Transcript ("Tr."), Dkt. 13, at 109.)  The claim was initially denied

on March 8, 2017.  (Tr. 17, 110.)  Plaintiff filed a written request for a hearing on March 28, 2017.

(Tr. 17.)  On October 18, 2018, Plaintiff appeared in Jamaica, New York for a hearing before

Administrative Law Judge ("ALJ") Margaret Donaghy.  (Tr. 17, 36–64.)  Plaintiff's father testified

at a second hearing on February 26, 2019 (Tr. 90–98), and a vocational expert testified at a third

hearing on July 17, 2019 (Tr. 68–86).  By decision dated August 28, 2019, the ALJ found that

Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  (Tr. 29.)  On

August 7, 2020, the ALJ's decision became final when the Appeals Council of the SSA's Office

of Appellate Operations denied Plaintiff's request for a review of the decision.  (Tr. 1–6.)

Thereafter, Plaintiff timely[1] commenced this action.

## II.     The ALJ's Decision

### A.     The Five-Step Inquiry

In evaluating disability claims, the ALJ must conduct a five-step inquiry.  The plaintiff

bears the burden of proof at the first four steps of the inquiry, and the Commissioner bears the

burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).[2]  First, the ALJ

determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R.

§ 404.1520(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*

If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff

suffers from a severe impairment.  *Id.* § 404.1520(a)(4)(ii).  An impairment is severe when it

"significantly limits [the plaintiff's] physical or mental ability to do basic work activities."  *Id.*

---

[1] According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security
> made after a hearing to which he was a party . . . may obtain a review of such
> decision by a civil action commenced within sixty days after the mailing to him of
> notice of such decision or within such further time as the Commissioner of Social
> Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is
presumed received five days after it is dated unless the claimant makes a reasonable showing to
the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at
*3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard,
the Court determines that Plaintiff received the Commissioner's final decision on August 12, 2020
(*i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on August 7, 2020)
and that Plaintiff's filing of the instant action on August 21, 2020—9 days later—was timely.  (*See
generally* Complaint, Dkt. 1.)

[2] Unless otherwise noted, all legal citations in this Memorandum and Order omit any
internal quotation marks, citations, brackets, and ellipses.

§ 404.1522(a).  If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled.  *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1.  If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 404.1520(a)(4)(iii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[3] before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting."  *Id.* § 404.1545(a)(1).  The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record."  *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the plaintiff cannot,

---

[3] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam).  "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because the claimant 'would not actually be hired to do work she could otherwise do.'" *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. § 416.966(c)(1), (3), (7)).

or if no past relevant work exists, the ALJ will proceed to step five and determine whether the plaintiff, given his or her RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

### B.    The ALJ's Decision

At step one, the ALJ noted that Plaintiff "worked after the alleged onset date" of May 11, 2015, but "defer[red] a finding on the issue of whether this work was substantial gainful activity" until "a later step in the sequential evaluation." (Tr. 20.) At step two, the ALJ found that Plaintiff's anxiety disorder is a severe impairment, but that Plaintiff's depressive disorder is not severe. (Tr. 20.) At step three, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06 [for anxiety disorder]." (Tr. 20.) The ALJ concluded that Plaintiff has the RFC "to perform a full range of work at all exertional levels" with some "nonexertional limitations." (Tr. 23.) The ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence . . . ." (Tr. 24.) At the fourth step, the ALJ found Plaintiff is unable to perform any past relevant work. (Tr. 27.) At the fifth step, the ALJ concluded that Plaintiff's non-exertional restrictions compromised her "ability to perform work at all exertional levels," but that there were jobs in the national economy in significant numbers that Plaintiff could perform. (Tr. 28.) The ALJ thus determined that Plaintiff is not disabled.

STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g).

4

In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151.  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*  But courts must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

### DISCUSSION

Plaintiff contends that (1) "the ALJ erred [by] elevating the opinions of Defendant's psychologists over the opinions of Plaintiff's psychiatrists," (2) "the ALJ's assessment of Plaintiff's complaints lacks substantial evidence," (3) "the ALJ's Step 5 findings lack substantial evidence," and (4) "the case should be remanded to calculate benefits."  (Plaintiff's Memorandum of Law in Support of Her Motion ("Pl. Br."), Dkt. 16, at i.)  The Court grants Plaintiff's motion on the ground that the ALJ failed to properly evaluate the opinions of Plaintiff's psychiatrists, and remands for further proceedings. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.").

I.      **The ALJ Failed to Properly Weigh the Medical Opinion Evidence in Finding RFC**

Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating

physicians in evaluating Plaintiff's RFC.  The Court agrees.

A.      **Treating Physician Rule**[4]

"Social Security Administration regulations, as well as [Second Circuit] precedent,

mandate specific procedures that an ALJ must follow in determining the appropriate weight to

assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "First,

the ALJ must decide whether the opinion is entitled to controlling weight." *Id.*  "The opinion of a

claimant's treating physician . . . is given controlling weight so long as it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is [consistent] with the

other substantial evidence in the case record." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must

determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95.  "In doing so, it must

explicitly consider" (1) "the frequency, length, nature, and extent of treatment;" (2) "the amount

of medical evidence supporting the opinion;" (3) "the consistency of the opinion with the

remaining medical evidence;" and (4) "whether the physician is a specialist." *Id.* at 95–96; *see*

*also* 20 C.F.R. § 404.1527(c)(2).  "An ALJ's failure to 'explicitly' apply the [four] factors when

assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96.  In such cases, a court

must remand unless the ALJ has "provided good reasons for its weight assignment," *id.*, or unless

---

[4] The treating physician rule applies to claims filed before March 27, 2017, which includes Plaintiff's claim here.  *See* 20 C.F.R. §§ 404.1527, 416.927 (2017); *see also Woodhouse v. Saul*, No. 19-CV-5921 (PKC), 2021 WL 878772, *4 (E.D.N.Y. Mar. 8, 2021) (applying the treating physician rule when the plaintiff filed before the SSA's new regulations took effect, even though the hearing before the ALJ and decision by the ALJ were after the SSA's new regulations took effect).

Case 1:20-cv-03844-PKC   Document 27   Filed 02/28/22   Page 7 of 14 PageID #: 874

"a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed," *id.*  Thus, "[a]t both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion."  *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2)).  Courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

In contrast to their review of opinions from treating physicians, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419.  And "[w]here . . . there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'"  *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 78 n.4 (2d Cir. 2012) (summary order) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98.  Likewise, the "treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time." *Rankov v. Astrue*, No. 11-CV-02534 (CBA), 2013 WL 1334085, at *9 (E.D.N.Y. Mar. 30, 2013).

**B.    The ALJ Failed to Adequately Apply the Treating Physician Rule**

The ALJ declined to give controlling weight to the opinions of Plaintiff's treating psychiatrists, Drs. Stephen Geisler and Xiaowei Sun, who have treated Plaintiff since 2005.  (Tr. 549, 600, 607.)  Instead, the ALJ gave Dr. Geisler's opinion "little weight," and gave opinions of Dr. Sun "little" and "limited" weight.

1.    The ALJ Failed to Provide Good Reasons for Discounting Dr. Geisler's
      Opinion

Plaintiff contends that the ALJ erred in assessing the testimony of his treating psychiatrist,

Dr. Stephen Geisler.  Dr. Geisler opined that Plaintiff suffers from anxiety and bipolar disorder.

(Tr. 600.)  He observed that Plaintiff experiences difficulty concentrating or thinking, sleep

disturbance, diminished interest in almost all activities, distractibility, feelings of

guilt/worthlessness, restlessness, fatigue, irritability, depressed mood, pressured speech, panic

attacks, and repetitive behaviors.  (Tr. 600–01.)  According to Dr. Geisler, these conditions

markedly limit Plaintiff's ability to "interact with others" and to "concentrate, persist, or maintain

pace." (Tr. 601.)  Dr. Geisler also opined that Plaintiff experiences moderate to marked limitations

in understanding and memory, sustained concentration and persistence, certain social interactions,

and adaption.  (Tr. 602–04.)

The ALJ gave Dr. Geisler's opinion "little weight" on the ground that it was "not well

supported by treatment history, medication usage, hospitalizations or clinical findings," and was

"inconsistent with Dr. Geisler's own findings on examination." (Tr. 26.)  But in declining to afford

Dr. Geisler's opinion controlling weight, the ALJ failed to explicitly consider the "length, nature,

and extent of treatment" or "whether [Dr. Geisler] is a specialist," as the treating physician rule

required. *Estrella*, 925 F.3d at 95–96.  "Because the ALJ procedurally erred, the question becomes

whether a searching review of the record assures [the Court] that the substance of the [treating

physician] rule was not traversed—i.e., whether the record otherwise provides good reasons for

assigning 'little weight' to Dr. [Geisler's] opinion." *Id.* at 96.  The Court concludes that the record

does not and that the ALJ traversed the substance of the treating physician rule.

In deeming Dr. Geisler's opinion inconsistent with his own notes, the ALJ relied on Dr.

Geisler's observations that, on various occasions, Plaintiff exhibited "no psychotic symptoms,

8

good eye contact, normal speech, normal thought process, full orientation, normal attention and concentration, normal recent and remote memory, good insight and judgment, and normal impulse control." (Tr. 26.) But the ALJ did not explain how such observations are inconsistent with Plaintiff's sleep disturbance, diminished interest in almost all activities, feelings of guilt/worthlessness, restlessness, fatigue, irritability, depressed mood, pressured speech, panic attacks, and repetitive behaviors. (Tr. 600–01.) And, in any event, "[s]uch an assessment is beyond the scope of the ALJ's authority, since 'neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) (summary order) (quoting *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)) (concluding that the ALJ, who "expended significant energy recounting the treating physician's notes," lacked authority to say that those "notes indicated nothing more than 'mild anxiety'" simply because they reflected that the plaintiff "arriv[ed] at appointments well-groomed and with a calm affect").

Further, to the extent the ALJ found any purported inconsistencies to be significant, she "could have requested more information from [Dr. Geisler] to reconcile any internal inconsistency." *Horowitz v. Comm'r of Soc. Sec.*, No. 20-CV-2351 (PKC), 2021 WL 4147271, at *8 (E.D.N.Y. Sept. 13, 2021) (collecting cases). This is especially significant given that Dr. Geisler noted that, in his opinion, Plaintiff's "impairments [are] likely to produce 'good days' and 'bad days.'" (Tr. 605.) And although Dr. Geisler observed Plaintiff exhibiting some apparently healthy traits, his treatment notes also reflect the symptoms he described in his opinion. For example, on June 13, 2018, Dr. Geisler noted that although Plaintiff "appear[ed] to be doing relatively well," she had "significant anxiety." (Tr. 609.) On July 11, 2018, Dr. Geisler noted that Plaintiff's chief complaint was anxiety, that she "worr[ied] about many things," and that her mood

9

and affect were "anxious." (Tr. 618–19.) Dr. Geisler made similar observations in other visits with Plaintiff. (Tr. 613, 615, 617, 623, 624, 628.) He also noted that Plaintiff displayed "tearfulness, feeling overwhelmed, and tremors" (Tr. 626), which the ALJ did not mention. Thus, the ALJ failed to apply the treating physician rule to Dr. Geisler's opinion and, based on the record, traversed the substance of the rule.

2.      The ALJ Failed to Provide Good Reasons for Discounting Dr. Sun's
          Opinion

Plaintiff also contends that the ALJ erred in assessing the testimony of Dr. Xiaowei Sun, another psychiatrist, who first treated Plaintiff in 2005. (Tr. 549.) Dr. Sun's opinion was substantially the same as Dr. Geisler's. Like Dr. Geisler, Dr. Sun opined that Plaintiff suffers from anxiety and bipolar disorder. (Tr. 549.) Dr. Sun similarly observed that Plaintiff experiences difficulty concentrating or thinking, sleep disturbance, diminished interest in almost all activities, distractibility, feelings of guilt/worthlessness, restlessness, fatigue, irritability, depressed mood, pressured speech, panic attacks, and repetitive behaviors. (Tr. 549–50.) Dr. Sun also reported that Plaintiff experiences disproportionate fear or anxiety. (Tr. 550.) According to Dr. Sun, these conditions markedly limit Plaintiff's ability to "interact with others" and to "concentrate, persist, or maintain pace." (Tr. 550.) Dr. Sun also indicated that Plaintiff experiences moderate to marked limitations in certain categories of understanding and memory, sustained concentration and persistence, certain social interactions, and adaption. (Tr. 550–53.) Finally, Dr. Sun opined that Plaintiff's limitations would cause her to be absent from work "more than three times a month" and "off task" "41+%" of the time. (Tr. 554.)

The ALJ afforded "little weight" to Dr. Sun's opinion regarding bipolar disorder and anxiety disorder, concluding that there was "no support for" the specified symptoms. (Tr. 26.) The ALJ afforded "limited weight" to Dr. Sun's opinion that Plaintiff would be absent from work

10

more than three days per month, reasoning that "[s]uch limitation [was] not consistent with the record as a whole or Dr. Sun's own examinations." (Tr. 26.)

As with Dr. Geisler, the ALJ failed to explicitly consider "the frequency, length, nature, and extent of treatment" or "whether [Dr. Sun] is a specialist," as the treating physician rule required. *Estrella*, 925 F.3d at 95–96. "Because the ALJ procedurally erred, the question [again] becomes whether a searching review of the record assures [the Court] that the substance of the [treating physician] rule was not traversed—i.e., whether the record otherwise provides good reasons for assigning 'little weight' to Dr. [Sun's] opinion." *Id.* at 96. Again, the ALJ traversed the substance of the rule.

In deeming Dr. Sun's opinion inconsistent with her own notes, the ALJ observed that "Dr. Sun consistently found [Plaintiff] to have good eye contact, normal speech, linear though[t] process, normal impulse control, fair insight and judgment, and normal fund of knowledge." (Tr. 26.) But, as with Dr. Geisler, the ALJ did not explain how such observations are inconsistent with Plaintiff's sleep disturbance, diminished interest in almost all activities, feelings of guilt/worthlessness, restlessness, fatigue, irritability, depressed mood, pressured speech, panic attacks, disproportionate fear or anxiety, and repetitive behaviors. Dr. Sun noted Plaintiff's anxiety on many occasions (Tr. 559, 562, 565, 568, 574, 577, 581, 583, 586, 589, 592, 595), and, like Dr. Geisler, observed in her opinion that Plaintiff's anxiety manifested "in the context of difficulty concentrating, tearfulness, feeling overwhelmed and tremors" (Tr. 598). Dr. Sun's notes provide no basis to find that Plaintiff's "good eye contact, normal speech, linear though[t] process, normal impulse control, fair insight and judgment, and normal fund of knowledge" (Tr. 26) are inconsistent with the conclusion that Plaintiff's limitations would cause her to be absent from work "more than three times a month" and "off task" "41+%" of the time. (Tr. 554.) In any case, as

11

noted, "[s]uch an assessment is beyond the scope of the ALJ's authority, since 'neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" *Flynn*, 729 F. App'x at 121 (quoting *Shaw*, 221 F.3d at 135).

Defendant points out that "Dr. Sun stated in [her opinion] that Plaintiff had no limitation interacting appropriately with the general public, getting along with co-workers or peers, and maintaining socially appropriate behavior." (Defendant's Memorandum of Law in Support of Cross-Motion ("Def. Br."), Dkt. 22-1, at 27.) Defendant argues that this is inconsistent with Dr. Sun's determination that Plaintiff has "marked limitations interacting with others and concentrating, persisting, or maintaining pace." (*Id.*) But to the extent the ALJ found this alleged inconsistency to be significant, she "could have requested more information from [Dr. Sun] to reconcile any internal inconsistency." *Horowitz*, 2021 WL 4147271, at *8 (collecting cases). Thus, the ALJ failed to apply the treating physician rule to Dr. Sun's opinion and, based on the record, traversed the substance of the rule.[5]

\* \* \*

---

[5] Defendant also contends that "none of Dr. Sun's treatment notes documented any problems with Plaintiff's interaction with others or concentrating," but instead "showed Plaintiff enjoying the holidays with her family, attended a wedding, appearing calmer and cooperative, and reporting feeling ok." (Def. Br., Dkt. 22-1, at 28.) But "such activity does not, in itself, contradict a claim of disability." *Iorio v. Comm'r of Soc. Sec.*, No. 18-CV-5898 (PKC), 2020 WL 1536406, at *7 (E.D.N.Y. Mar. 30, 2020); *cf. Mahon v. Colvin*, No. 15-CV-02641 (PKC), 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017) ("[R]eliance on Plaintiff's reported daily activities of self-care, child-care, and hobbies does not provide a sufficient basis for discounting almost entirely the well-supported expert testimony of licensed psychiatrists and psychologists regarding Plaintiff's ability to sustain a *job*."). And, in any case, like Dr. Geisler, Dr. Sun noted that Plaintiff's "impairments [are] likely to produce 'good days' and 'bad days'" (Tr. 554), which could explain how Plaintiff's social behavior on some occasions is consistent with Dr. Sun's conclusions.

Because the ALJ failed to afford proper weight to the opinions of Plaintiff's treating psychiatrists, or to justify affording "little" or "limited" weight to those opinions, the Court must remand for further proceedings.[6]

**CONCLUSION**

For these reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies Defendant's cross-motion.   The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.   The Clerk of Court is respectfully directed to enter judgment and close this case.[7]

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: February 28, 2022
        Brooklyn, New York

---

[6] "Because the Court reverses and remands on these grounds, the Court need not address the ALJ's evaluation of Plaintiff's credibility." *See Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282, at *7 (E.D.N.Y. Jan. 2, 2018).  On remand, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record," *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010), but "[a] finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record," *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988).

The Court also need not address Plaintiff other arguments, including whether the ALJ's findings at step five lack substantial supporting evidence, or whether the ALJ erred by relying on the opinion of a psychologist in assessing RFC.  The Court notes, however, that "licensed psychologist[s]" are "acceptable medical source[s]" for ALJs to consider.  20 C.F.R. § 404.1502; *see also McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (affirming where an ALJ relied on a psychologist and referring to her as a "psychiatric consultative examiner").

[7] Although courts have the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g), the record here does not "provide persuasive evidence of total disability that would render any further proceedings pointless," *Estrella*, 925 F.3d at 98.  The Court therefore declines Plaintiff's request to "remand[] solely to calculate benefits." (Pl. Br., Dkt. 16, at 4.)

13

14